**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NAGEL RICE, LLP,** | Civil Action No. 2:12-cv-05081 (CCC)(JAD) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **RICHARD COFFMAN, et al.,** | |
| **Defendants.** | |

This matter comes before the Court upon motion by defendants Richard Coffman, Wyatt Durrette, John Wylie (collectively, the "Individual Defendants") and defendants The Coffman Law Firm f/k/a Richard Coffman, P.C., DurretteCrump, PLC f/k/a DurretteBradshaw, PLC, Futterman Howard Ashley Watkins & Weltman P.C. f/k/a Futterman, Howard, Watkins, Wylie & Ashley, Chtd. (collectively, the "Law Firm Defendants") (together with the Individual Defendants, "Defendants") to dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. After carefully considering the submissions of the parties, and based upon the following, it is the recommendation of this Court that Defendants' motion to dismiss with prejudice be **GRANTED**.

### I.     BACKGROUND.

This lawsuit represents plaintiff Nagel Rice, LLP's ("Plaintiff") third attempt to obtain a share in legal fees that were awarded in a multidistrict litigation ("MDL") that was litigated and settled in California. Plaintiff filed a four-count Complaint alleging that an oral fee sharing agreement existed between it and Defendants, and that Defendants' alleged failure to pay

1

Plaintiff in accordance with the agreement constituted a breach of contract, unjust enrichment, conversion and a breach of the duty of good faith and fair dealing.

Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  For the reasons discussed below, the Court finds that it lacks personal jurisdiction over Defendants and, therefore, recommended that the District Court grant Defendants' motion to dismiss.

A. The Agreement.

According to the Complaint, Plaintiff and Defendants separately filed class action proceedings against Morgan Stanley & Co. ("Morgan Stanley"), each asserting that Morgan Stanley failed to pay overtime compensation to stockbrokers in violation of federal and state wage and hour laws. (Compl. ¶ 6, ECF No. 1).  These actions were consolidated with an earlier-filed MDL before Judge Robert T. Benitez in the Southern District of California under the caption Steinberg, et al. v. Morgan Stanley & Co., et al., No. 06-cv-2628 (BEN)(NLS)(S.D. Cal.) (the "Morgan Stanley Action").  A global settlement of the Morgan Stanley Action was reached, and Judge Benitez entered final judgment awarding attorneys' fees. (Br. Supp. Mot. Dismiss 2, ECF No. 6-1).

At some point after filing its class action, Plaintiff learned through Bruce Nagel ("Nagel"), a partner in Nagel Rice, LLP, that the lead counsel in the Morgan Stanley Action would not share any portion of the fees it negotiated with Morgan Stanley with Plaintiff's firm, or any other firm that filed late actions. (Compl. ¶ 8, ECF No. 6-1).  Plaintiff alleged that Nagel contacted defendant Richard Coffman ("Coffman"), and suggested that the two "join forces" in order to negotiate a potential involvement in finalizing the settlement and sharing the fees. (Id. at ¶ 9).  Nagel allegedly explained to Coffman that he had negotiated fee sharing arrangements

2

with the same co-lead counsel in the Morgan Stanley Action in prior matters, and outlined a strategy for doing the same in this matter. (Id.).

According to Plaintiff, Coffman advised that he was working with other law firms with respect to this issue, and would need to obtain their agreement before proceeding with Plaintiff. (Id. at ¶ 10).  Subsequently, Coffman allegedly responded to Plaintiff by a telephone call to Plaintiff's office in New Jersey to confirm that he and the other firms would work with Plaintiff to obtain a share of the fees and expenses awarded in the Morgan Stanley Action, and to divide such sum among the members of the group.  (Id.).  Plaintiff alleged it was agreed that Nagel would negotiate with lead counsel in the Morgan Stanley Action for a "global fee," which would then be divided among Defendants, Plaintiff and another law firm (the "Group") (the "Agreement").  (Id. at ¶ 12).  Plaintiff, in reliance on the Agreement, allegedly negotiated that the Group would obtain $590,000.000 to be divided amongst themselves. (Id. at ¶ 13).[1]  Plaintiff alleged that Nagel repeatedly spoke to Coffman to discuss, and made numerous requests by email and telephone regarding, the division of these fees.  (Id.).  However, Plaintiff alleged Defendants "excluded Nagel from any discussion and/or input regarding the allocation of the fees and rewarded themselves virtually all of the fees to the severe detriment of [Plaintiff]."  (Id. at ¶ 15).  Of the $590,000 Judge Benitez awarded the Group, Plaintiff received only $15,000.

Defendants offered a very different version of the fee dispute.  Specifically, Defendants alleged that at the conclusion of the Morgan Stanley Action, Judge Benitez ordered that all plaintiff firms, including the Law Firm Defendants and Plaintiff, submit time reports in support of the fee petition.  (Br. Supp. Mot. Dismiss 2, ECF No. 6-1).  Accordingly, lead counsel in the Morgan Stanley case directed all lawyer to report the time and expenses they spend working on

---

[1] The Court notes that Plaintiff, in this Complaint, did not allege where or how he effectuated the Agreement. However, Nagel's declaration avers that Nagel attended a meeting in New York City with lead counsel in the Morgan Stanley Action, among others, to negotiate on fee sharing.  (Nagel Decl. ¶ 6, ECF No. 9-1).

the case to them, for ultimate submission to Judge Benitez. (Id.). Each of the Defendants allegedly submitted their time reports; Plaintiff did not. (Id.). Defendants asserted that, in light of Plaintiff's failure to submit time records and its minimal role in the Morgan Stanley Action, they concluded that Plaintiff should only be awarded a small portion (i.e., $15,000) of the $590,000 Judge Benitez awarded the Group. (Id. at 3).

B. Procedural History.

As mentioned above, this is Plaintiff's third lawsuit with respect to the Agreement and the distribution of fees awarded in the Morgan Stanley Action.

After the Group allocated $15,000 to Plaintiff, Plaintiff filed suit in New York state court against Defendants ("Lawsuit No. 1"). (Br. Supp. Mot. Dismiss 3, ECF No. 6-1). However, Judge Benitez had retained exclusive jurisdiction over all fee disputes and, therefore, Plaintiff violated Judge Benitez's Order by filing its complaint in New York state court. (Id.). Plaintiff voluntarily dismissed Lawsuit No. 1. (Id.).

Thereafter, Plaintiff asked Judge Benitez for permission to bring a separate suit regarding its attorneys' fees dispute. (Id.). Judge Benitez granted this request. (Id.). Plaintiff filed a lawsuit on December 24, 2012, again in New York state court, which Defendants removed to the Southern District of New York ("Lawsuit No. 2"). (Id. at 3-4). Defendants successfully moved to dismiss Lawsuit No. 2 for lack of personal jurisdiction, and the Complaint was dismissed with prejudice. (Id.).

On August 18, 2012, Plaintiff filed the instant action.

II.    **ANALYSIS.**

To ascertain whether a court has personal jurisdiction over a defendant, a federal court sitting in diversity jurisdiction must conduct a two-step analysis. Howard Johnson Int'l, Inc. v.

4

DKS, LLC, No. 08-2316 (JAG), 2009 WL 2595685, *1, *3 (D.N.J. Aug. 20, 2009). First, the court must look to the forum state's long arm statute to determine if personal jurisdiction is permitted over the defendant. Id. Second, the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Id. (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996)). In this forum, the inquiry collapses into a single step because New Jersey's long arm statute permits the exercise of personal jurisdiction "coextensive with the due process requirements of the United States Constitution." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)).

The Fourteenth Amendment of the United States Constitution "limits the reach of long-arm statutes so that a court may not assert personal jurisdiction over a nonresident defendant who does not have certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436–37 (3d Cir.1987) (citation and internal quotations omitted). Accordingly, this Court may exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

      A.    Motion to Dismiss the Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2).

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden to establish sufficient facts to show that

jurisdiction is proper. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). While a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff, Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (quoting Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)), the court must still examine any evidence presented with regard to disputed factual allegations. See, e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155-56 (3d Cir. 2010) (examining the evidence supporting the plaintiff's allegations); Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990) ("A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence."). The plaintiff "need only establish a prima facie case of personal jurisdiction." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). However, a plaintiff may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction; "[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." Patterson, 893 F.2d at 604 (internal citations omitted).

A district court can assert either specific or general jurisdiction over a non-resident defendant. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415 & n. 9 (1984). A court may exercise general jurisdiction when a defendant has "continuous and systematic contacts" with the forum state. Id. The defendant's "contacts need not relate to the subject matter of the litigation." However, the plaintiff must show more than mere minimum contacts with the forum state. Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir.1987). General jurisdiction requires a 'very high threshold of business

activity.'" Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (quoting Compagnie des Bauxites de Guinea v. Ins. Co. of N. America, 651 F.2d 877, 891 (3d Cir. 1981). Moreover, the facts required to establish general jurisdiction must be extensive and persuasive. Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

On the other hand, specific jurisdiction arises where the claims arise out of the defendant's forum-related activities. See Helicopteros, 466 U.S. at 413-14. In order to establish specific jurisdiction, the relevant inquiry is: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of these activities; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). In establishing specific jurisdiction, it is not required that the defendant be physically located in the state while committing the alleged acts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984). A single act may satisfy minimum contacts if it creates a substantial connection with the forum. Burger King, 471 U.S. at 476 n. 18.

### 1. General Jurisdiction.

Defendants asserted that the Court lacks general jurisdiction over any of them. They argued that they do not have "continuous and systematic contacts with New Jersey" insomuch as "no Defendant[] is a citizen or resident of New Jersey, none are admitted to practice law in New Jersey, none own or maintain any personal or business real estate, offices, telephone listings or bank accounts in New Jersey, and none paid taxes to New Jersey, other than as incidental to travel." (Br. Supp. Mot. Dismiss 8, ECF No. 6-1). The Court agrees.

In an attempt to establish that the Law Firm Defendants have substantial contacts with New Jersey, Plaintiff referred to the firm's websites.[2] However, the Third Circuit explained in Toys "R" Us, Inc. v. Step Two, S.A., that: ". . . the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." 318 F.3d 446, 454 (3d Cir. 2003); see also Gianfredi v. Hilton Hotels Corp., Inc., CIVA 08-5413 (PGS), 2010 WL 1381900, *1, *5 (D.N.J. Apr. 5, 2010) report and recommendation adopted, CIV.A. 08-5413 (PGS), 2010 WL 1655635 (D.N.J. Apr. 22, 2010) ("It must be noted that Plaintiffs have a tough hill to climb with this argument, as courts regularly decline to exercise general jurisdiction based on this framework even with interactive websites.") The statements and functionalities of the Law Firm Defendants' websites cited by Plaintiff fall woefully short of suggesting that any of the Law Firm Defendants "purposefully availed" themselves of conducting business within New Jersey by directly targeting their websites to this State.[3] Gianfredi, 2010 WL 1381900 at *5 ("It is, indeed, Plaintiffs' burden at this stage to show how New Jersey is the suitable forum based on the website. This they have not done.)

Thus, the Court finds that it lacks general jurisdiction over Defendants.

---

[2] Plaintiff also referred to the fact that he spoke to two defendants (i.e., Mr. Coffman and Mr. Durrette) on several occasions "over the years" regarding other cases or personal matters. (Opp. Br. 18-19, ECF No. 9). The Court finds these non-specific and generalized allegations insufficient to suggest "systematic and continuous" contacts with New Jersey.

[3] With regard to the Coffman Law Firm website, Plaintiff alleged: "it boasts 'We represent businesses throughout Texas and across the United States . . .We stand ready – whenever and wherever you need us.'" (Opp. Br. 20, ECF No. 9). Regarding the DurretteCrump, PLC website, Plaintiff alleged: "DurretteCrump boasts on its website 'DurretteCrump handles most kinds of legal matters throughout Virginia and litigation throughout the United States.'" (Id.). Finally, regarding Futterman Howard Ashley Watkins & Weltman, P.C.'s website, Plaintiff alleged: "the general public could go on Futternan Howard's website and send an email about a potential case directly to the firm from anywhere, including New Jersey." (Id.)

## 2. Specific Jurisdiction.

The Court finds that Defendants' contacts with New Jersey are insufficient to establish specific jurisdiction in the District of New Jersey.

As correctly pointed out by Defendants, it was Plaintiff, through Nagel, that initially reached out to Coffman to enter the Agreement; none of the Defendants reached out to Plaintiff in New Jersey to establish the business relationship. (Reply Br. 4, ECF No. 12). Rather, apart from a single telephone call from Coffman to Nagel in New Jersey – which itself was a response to Nagel's initial inquiry to "join forces" in order to negotiate a potential involvement in finalizing the settlement and sharing the fees (Compl. ¶¶ 9-10, ECF No. 1) – Defendants' only communications with Plaintiff were in reply to those initiated by Nagel. (Reply Br. 4, ECF No. 12). The only in-person negotiations regarding the Agreement alleged in the Complaint took place in New York City, not New Jersey.[4] (Nagel Decl. ¶ 6, ECF No. 9-1). None of the Defendants ever visited Plaintiff's offices in New Jersey.

Although the Court acknowledges that a defendant need not be physically present in a state to have "minimum contacts" sufficient to confer personal jurisdiction, see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1984), this District has also declined to find specific jurisdiction based on the mere fact that a defendant communicated with a plaintiff based in New Jersey without any further indication that such defendant "purposefully availed" itself of New Jersey law within the context of those communications. See Special Purpose Vehicle v. Celello, No. 11-7374, 2012 WL 3598258, *1, *3 (D.N.J. Aug. 20, 2012). Here, notwithstanding that

---

[4] Plaintiff made no allegation that defendants Wyatt Durrette, Durrette Crump, PLC, John Wylie, or Futterman Howard Ashley Watkins & Weltman, P.C. undertook any direct action directed to New Jersey, but argued that Coffman acted as their agent and, thus, they may be subject to personal jurisdiction. However, because the Court finds that Coffman and the Coffman's Firm's contacts with New Jersey are insufficient to establish personal jurisdiction, it need not address the issue of vicarious jurisdiction.

Defendants were aware they were entering a contract with a New Jersey law firm, there is little other evidence in the record suggesting that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). Consequently, Plaintiff failed to meet its burden of establishing personal jurisdiction over Defendants in the District of New Jersey.

        B.     Jurisdictional Discovery.

Plaintiff alternatively argued that even if the Court determined that it lacked personal jurisdiction over Defendants, it should nevertheless deny Defendants' motion to dismiss and, instead, allow Plaintiff to take jurisdictional discovery. (Opp. B. 24, ECF No. 9). The Court denies Plaintiff's request.

Plaintiff is correct in asserting that jurisdictional discovery should be allowed unless the plaintiff's claim is "clearly frivolous." Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997). However, jurisdictional discovery should not serve as "a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." LaSala v. Marfin Popular Bank Public Co., Ltd., 410 Fed. Appx. 474, 478 (3d Cir. 2011).

Here, Plaintiff's jurisdictional claims are "clearly frivolous" insomuch as they are unsupported by jurisdictional facts that would dispute the declarations submitted by Defendants, which directly address the issues Plaintiff would seek to explore through jurisdictional discovery. Specifically, Plaintiff stated jurisdictional discovery would allow it the "opportunity to examine the full extent of Defendants' business contacts with the state of New Jersey, including phone records, contracts, travel records, business received through their website, etc." (Opp. Br. 25,

ECF No. 9). However, Plaintiff did not allege facts supporting its speculation that Defendants had any "business contacts" with New Jersey. Moreover, Defendants submitted declarations swearing that they did not transact any business in New Jersey, are not admitted to practice law in New Jersey, do not own or maintain any personal or business real estate, offices, telephone listings or bank accounts in New Jersey, and did paid taxes to New Jersey, other than as incidental to travel. (Br. Supp. Mot. Dismiss 8, ECF No. 6-1). Plaintiff, who has the burden of establishing jurisdiction, has not countered with any jurisdictional *facts*. See Witasick v. Estes, CIV.A. 11-3895-NLH, 2012 WL 3075988 (D.N.J. July 30, 2012) (citing Southern Seafood Co. v. Holt Cargo Systems, Inc., No. 96–5217, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997) (denying jurisdictional discovery where defendants submitted affidavits attesting to a lack of jurisdictional contacts and plaintiffs countered with affidavits of mere speculation)). Plaintiff presented no factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between Defendants and the forum state.

Thus, it is recommended that Plaintiff's request for jurisdictional discovery be denied.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, it is the recommendation of this Court that Defendants' motion to dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(2) be **granted.**

**SO ORDERED**

JOSEPH A. DICKSON, U.S.M.J.

5/1/13

cc.   Honorable Claire C. Cecchi, U.S.D.J.

11